**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **R.D. and J.D.**

**No. 17-0688** (Wood County 16-JA-190 & 16-JA-191)

**MEMORANDUM DECISION**

Petitioner Mother P.D., by counsel Ernest Douglass, appeals the Circuit Court of Wood County's July 12, 2017, order terminating her parental rights to R.D. and J.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Robin S. Bonovitch, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2016, the DHHR filed an abuse and neglect petition against petitioner alleging that she admitted to using heroin while pregnant with the younger child, R.D., that the child was exhibiting signs of drug withdrawal, that the father of the older child, J.D., recently died of a heroin overdose, and that the maternal grandparents, who had been providing care for J.D., were not appropriate caregivers due to prior Child Protective Services ("CPS") investigations that substantiated abuse and neglect in the home. The petition also alleged that the grandparents failed to take action to protect J.D. and R.D. when they had knowledge of petitioner's drug abuse. The petition further alleged that the DHHR previously confirmed that the maternal grandfather committed "sexual abuse--exposure to adult sexuality; abuse--alcohol abuse by caretaker; abuse--excessive corporal punishment; and abuse--emotional/psychological abuse, labels child." The maternal grandmother committed "sexual abuse--exposure to adult sexuality; neglect--knowingly allows." An amended petition was filed in December of 2016 to

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

add J.H., the father of R.D., as a respondent, although it did not include any allegations of abuse or neglect against him.

In February of 2017, the circuit court held a hearing to address issues concerning petitioner's visitation with R.D. and J.D. The DHHR presented testimony that petitioner exhibited signs of drug use during her visits with her children, and was not complying with drug screens. Petitioner admitted that she failed to attend a visit with her children and that she repeatedly appeared late for some other visits with her children. Petitioner denied the visitation supervisor's assertion that she had fallen asleep during visits, but admitted that she sometimes closed her eyes during visits. Further, petitioner explained that she had not submitted to drug tests because she wanted to speak to her attorney before doing so. At the conclusion of the hearing, the circuit court ordered that visitation between petitioner and her children cease until petitioner produced a negative drug screen.

In May of 2017, the circuit court held an adjudicatory hearing after it was twice continued to allow additional time for depositions. The DHHR presented testimony that petitioner had knowledge of her pregnancy with R.D. in March of 2016 and that she tested positive for opiates at her first obstetric appointment in July of 2016. The DHHR also presented testimony that petitioner missed three appointments with her doctor prior to giving birth to R.D. Petitioner testified that she was using heroin at the time her pregnancy was confirmed in July of 2016. She further testified that she stopped using heroin and sought treatment, but relapsed in September of 2016 and started using heroin again. Additionally, the DHHR presented a report from the Camden Clark Medical Center Clinical Documentation Report that petitioner was engaged in recreational drug abuse, used heroin two to three times a week, and used heroin in the early morning hours on the day she gave birth to R.D. Further, the DHHR presented testimony that R.D. went through withdrawal symptoms caused by petitioner's drug use, and that at the time of R.D.'s discharge, her diagnosis was neonatal abstinence syndrome. The circuit court found that petitioner used heroin at a time when she knew she was pregnant, and failed to get proper prenatal care for R.D., as evidenced by her failure to attend appointments. With regard to J.D., although he resided with the maternal grandparents rather than petitioner, the circuit court found that petitioner failed to provide appropriate documentation that J.D. may have required in case of a medical emergency. The circuit court further found that J.D. was subject to risks of abuse and neglect due to petitioner's drug abuse.

In July of 2017, the circuit court held a dispositional hearing wherein petitioner moved for an improvement period and the DHHR and the guardian moved for the termination of petitioner's parental rights. At the time of disposition, petitioner was incarcerated upon a charge of possession with intent to deliver heroin. The circuit court found that petitioner was dishonest regarding her substance abuse during her pregnancy with R.D. The circuit court further found that petitioner's indeterminate period of incarceration, her dishonesty regarding her drug abuse, her lack of bond with her children, and the best interests of the children all supported termination of petitioner's parental rights. Ultimately, the circuit court denied petitioner's motion for an

improvement period and terminated her parental rights in its July 12, 2017, dispositional order.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's proceedings below.

First, petitioner argues that the circuit court erred in adjudicating her as an abusing parent. She argues that there was no evidence presented to show that J.D. resided with her at the time of the abuse of R.D. and, therefore, the DHHR failed to meet its burden to prove by clear and convincing evidence that J.D. was the victim of abuse or neglect. We disagree. West Virginia Code § 49-1-201 provides that a neglected child means a child "whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary . . . supervision[.]"

Here, the circuit court found that J.D. had been living with his maternal grandparents who were not appropriate caregivers due to their extensive history of abuse and neglect in the home. In fact, the DHHR ultimately removed the J.D. from the maternal grandparents' custody because of the prior CPS investigations. Although the petition was filed in response to petitioner's drug use during her pregnancy with R.D., it is also alleged that there was no court order in place granting custody or guardianship of J.D. to the maternal grandparents, and further alleged that the maternal grandparents were inappropriate caregivers for J.D. due to their CPS history and their knowledge of petitioner's substance abuse. Based on the evidence presented, the circuit court found that J.D. was also subject to risks of abuse and neglect due to petitioner's substance abuse. Accordingly, we find no error.

---

[2]The father of J.D. is deceased. J.H., the non-abusing father of R.D., retained his parental rights. According to the guardian and the DHHR, the children are currently placed together in a foster home. The permanency plan is for J.H., the biological father of R.D, to assume custody of R.D. and to adopt J.D. The concurrent permanency plan is for both children to be adopted by their current foster family.

Additionally, in support of her argument that the circuit court erred in adjudicating her as an abusing parent, petitioner argues that the circuit court failed to establish that petitioner was aware she was pregnant at the time of her first use of heroin and that the test to determine any effects on the child of opiate use by petitioner did not adequately distinguish between the illicit use of heroin and the legal use of suboxone. Specifically, petitioner argues that the DHHR failed to present clear and convincing evidence of harm to R.D. caused by her use of heroin during her pregnancy with R.D.

The evidence below was sufficient to establish that petitioner abused her children. This Court has held that the "presence of illegal drugs in child's system at birth constitutes sufficient evidence that child is an abused and/or neglected child[.]" Syl. Pt. 1, in part, *In re A.L.C.M.*, 239 W.Va. 382, 801 S.E.2d 260 (2017). First, petitioner presents no evidence that she legally used suboxone during her pregnancy. Also, the record on appeal shows that the DHHR clearly established petitioner abused drugs when she knew she was pregnant with R.D. and failed to get proper prenatal care, as evidenced by her failure to attend appointments. The record also established that petitioner used heroin recreationally two to three times a week, and within hours prior to giving birth to R.D. Petitioner contests the fact that she used heroin within hours prior to giving birth to R.D., but presented no evidence that she did not use heroin during that time. That said, the exact time and number of times she used heroin during her pregnancy is irrelevant because petitioner admitted to using heroin during her pregnancy with R.D. The DHHR also established that after she was born, R.D. went through withdrawal symptoms due to petitioner's drug use, and, at the time of her discharge from the hospital, R.D. was diagnosed with neonatal abstinence syndrome. Based on this evidence, we find no error in the circuit court's adjudication of petitioner as an abusing parent.

Finally, petitioner argues that the circuit court erred in terminating her parental rights. Petitioner asserts that the circuit court failed to consider a less-restrictive alternative and that termination of her parental rights to R.D. was not necessary for the child's welfare because petitioner was in jail and, therefore, could not cause any harm to the child. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

As discussed above, the record on appeal shows that petitioner had a history of substance abuse and admitted to using heroin while she was pregnant with R.D. Additionally, the DHHR presented testimony that petitioner exhibited signs of drug use during her visits with the children and failed to comply with drug screens. Prior to the dispositional hearing, petitioner was arrested and charged with possession with intent to deliver heroin and was incarcerated. Accordingly, the circuit court found no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that the best interests of the children supported termination of petitioner's parental rights. As previously stated, pursuant to West Virginia Code § 49-4-

4

604(b)(6), circuit courts are directed to terminate parental rights upon these findings. Further, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 12, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker